UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLOSED LOOP MARKETING,
INC., a California corporation,

      Plaintiff,

   v.

CLOSED LOOP MARKETING, LLC,
doing business as CLOSED
LOOP MARKETING & ADVERTISING,
an Idaho Limited Liability
Corporation; and DOES 1
through 10, inclusive,

      Defendants.
_____/

NO. CIV. S-08-1500 LKK/DAD

O R D E R

Plaintiff and defendant are both companies engaged in the business of, inter alia, internet marketing consulting and advertising consulting.  At the time this action was filed, plaintiff and defendant both operated under the name "Closed Loop Marketing," although defendant argues that it has since adopted the name "CLM."  Plaintiff brings this action alleging that it has a protectable interest in the trade name Closed Loop Marketing, and that defendant has infringed upon this interest and diluted the name.

1

1     Before the court are two motions: plaintiff's motion for a
2   preliminary injunction and defendant's motion to dismiss.  Both
3   motions call upon the court to determine essentially the same
4   issues.   For the reasons stated below, defendant's motion to
5   dismiss is granted.   Plaintiff's motion for a preliminary
6   injunction is therefore denied.

7                             **I. FACTS**

8   **A)   Evidentiary Issues**

9     This case has not progressed beyond the filing of pre-answer
10  motions, yet the parties have already submitted well over three
11  hundred pages of exhibits and declarations.   Many of these
12  submissions are "capable of accurate and ready determination by
13  resort to sources whose accuracy cannot reasonably be questioned,"
14  and for these submissions, the court must grant parties' requests
15  for judicial notice.   Fed. R. Ev. 201(b)(2), (d).   The court
16  disregards defendants' exhibits to the extent that they contain
17  matters for which the court is not required to grant the request
18  for judicial notice.

19    The court may consider judicially noticed evidence in
20  evaluating a rule 12(b)(6) motion to dismiss without transforming
21  the motion into a motion for summary judgment.   Tellabs v. Makor
22  Issues and Rights, __ U.S. __, 127 S.Ct. 2499, 2509 (2007) (citing
23  5b Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)), United
24  States v. 14.02 Acres of Land More or Less in Fresno County, 530
25  F.3d 883, 894 (9th Cir. 2008) (quoting Lee v. City of Los Angeles,
26  250 F.3d 668, 688 (9th Cir. 2001)).

1    Because the court resolves this case on the motion to dismiss,

2    this evidence is construed in the light most favorable to the

3    plaintiff, and plaintiff's non-conclusory factual allegations are

4    taken as true.

5    **B)    Factual Background**

6    The phrase "closed loop marketing" is widely used in online

7    marketing, as evidenced by advertisements, job announcements, etc.

8    Indeed such use was made up to four years prior to plaintiff's

9    adoption of the name.[1]  (Pl.'s Opp'n Mot. Dismiss 7:20-24, Def.'s

10   Mem. Supp. Mot. Dismiss 6:23-28, Def.'s Request for Judicial Notice

11   (hereinafter RJFN) Supp. Mot. Dismiss Ex. F.)   As is perhaps

12   typical of phrases popular in the marketing and internet

13   industries, the precise meaning of "closed loop marketing" is

14   unclear and neither party has provided the court with a precise

15   definition.   Nonetheless, the parties appear to agree that the

16   phrase refers to a particular marketing process.

17   Plaintiff began to use the name "Closed Loop Marketing" in

18   May, 2001.  (Compl. ¶ 6.)  Plaintiff alleges that it has used the

19   names Closed Loop Marketing, Closed Loop, and CLM since that time.

20   Plaintiff is a California Corporation, with a principal place of

21   business in Placer County, California.  Plaintiff began operations

22

---

23       [1] Judicial notice is appropriate with respect to the fact that
24   the phrase appears in particular announcements, advertisements, and
     press pieces, and the dates when the materials were published.
25   Plaintiff does not dispute these elements.  The court does not
     consider these materials' representations, if any, as to the
26   meaning or meanings of the phrase, or their representations
     regarding further use of the phrase.

1  as an LLC, but was converted to a corporation effective January 1,
2  2005.

3       Plaintiff attempted to register "Closed Loop Marketing" as a
4  federal service mark on November 24, 2003.  In each of three
5  separate filings, the examiner determined that the mark was not
6  protectable, because it was "merely descriptive" and/or "generic."
7  (RFJN Opp'n Prelim. Inj. Ex. 49, Ex. 50, Ex. 52 (office actions of
8  6/16/04, 1/31/06, and 7/24/06).)  Thus, the service mark "Closed
9  Loop Marketing" is not registered, and the United States Patent and
10 Trademark Office determined that it could not be registered.

11      Plaintiff alleges that the trade name Closed Loop Marketing
12 has nonetheless "acquired secondary meaning as being associated
13 with plaintiff and its services."  Plaintiff further alleges that
14 it has developed and maintains substantial goodwill associated with
15 the name.  In the terms used by the caselaw, plaintiff alleges that
16 the name is either suggestive or descriptive.

17      Defendant is an Idaho LLC, formed in September 2003 under the
18 name "Closed Loop Marketing, LLC."  (Compl. ¶ 7.)  In January 2006,
19 defendant adopted the name "Closed Loop Marketing and Advertising."
20 (Id.)  Defendant asserts that it is in the process of changing its
21 name from "Closed Loop Marketing, LLC" to "CLM, LLC."  As evidence
22 of the change, defendant has submitted exhibits indicating that on
23 May 22, 2008, defendant filed articles of organization for CLM,
24 LLC; that on July 31, 2008, an Idaho State Tax Commission Income
25 Tax Withholding Account Number was issued to CLM, LLC; and that
26 defendant's website now redirects to a new address featuring the

4

1  new name and logo.[2]  Plaintiff argues, however, that the change is

2  not yet complete, because defendant has created a *new* entity named

3  "CLM, LLC," and "Closed Loop Marketing, LLC" has not been

4  dissolved.  (Pl.'s Opp'n to Mot. Dismiss, 13:8-9.)

5      Plaintiff alleges that plaintiff and defendant are engaged in

6  the same lines of business, and that defendant chose its name

7  despite actual knowledge of plaintiff's name and of actual customer

8  confusion.

9      Actual customer confusion regarding the two businesses has

10  allegedly occurred when, inter alia, employees of HP (a customer

11  of both parties) asked whether the parties were related (Compl. ¶

12  13(b)); when HP twice mailed checks in payment for services to the

13  wrong company (Compl. ¶¶ 13(h), (j)); and when the organizers of

14  a conference mistakenly created nametags for attending employees

15  of the two parties which identified all attendees as employees of

16  plaintiff (Compl. ¶ 13(c)).  More generally, plaintiff alleges that

17  an ordinary person would believe that the two parties were

18  branches, subsidiaries, or offices of a single entity.  (Compl. ¶

19  12.)  Plaintiff alleges that as a result of this confusion, it has

20  lost customers.  (Compl. ¶ 26.)

21                          **II. STANDARD**

22      In order to survive a motion to dismiss for failure to state

23  a claim, plaintiffs must allege "enough facts to state a claim to

24  _____

25      [2] The court takes judicial notice of defendants' filings
    related to the name change (as public records), and of the fact
26  that the website does now redirect to another page.

5

1  relief that is plausible on its face." <u>Bell Atlantic Corp. v.</u>

2  <u>Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1974 (2007).   While a

3  complaint need not plead "detailed factual allegations," the

4  factual allegations it does include "must be enough to raise a

5  right to relief above the speculative level." <u>Id.</u> at 1964-65.

6       The Supreme Court recently held that Federal Rule of Civil

7  Procedure 8(a)(2) requires a "showing" that the plaintiff is

8  entitled to relief, "rather than a blanket assertion" of

9  entitlement to relief. <u>Id.</u> at 1965 n.3.   Though such assertions

10 may provide a defendant with the requisite "fair notice" of the

11 nature of a plaintiff's claim, the Court opined that only factual

12 allegations can clarify the "grounds" on which that claim rests.

13 <u>Id.</u> "The pleading must contain something more. . . than . . . a

14 statement of facts that merely creates a suspicion [of] a legally

15 cognizable right of action." <u>Id.</u> at 1965, quoting 5 C. Wright &

16 A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

17 ed. 2004).[3]

18      On a motion to dismiss, the allegations of the complaint must

19 be accepted as true. <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).

20 The court is bound to give the plaintiff the benefit of every

21 reasonable inference to be drawn from the "well-pleaded"

22 allegations of the complaint. <u>See</u> <u>Retail Clerks Int'l Ass'n v.</u>

23

24      [3] The holding in <u>Twombly</u> explicitly abrogates the well
   established holding in <u>Conley v. Gibson</u> that, "a complaint should
25 not be dismissed for failure to state a claim unless it appears
   beyond doubt that the plaintiff can prove no set of facts in
   support of his claim which would entitle him to relief."   355 U.S.
26 41, 45-46 (1957); <u>Twombly</u>, 127 S. Ct. at 1968.

1  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

2  complaint is construed favorably to the pleader.  See Scheuer v.

3  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

4  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court

5  does not accept as true unreasonable inferences or conclusory legal

6  allegations cast in the form of factual allegations.  W. Mining

7  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

8                            **III. ANALYSIS**

9  **A.   Mootness**

10      Defendant argues that it has changed its name from Closed Loop

11  Marketing to CLM, and that this renders plaintiff's claim moot.

12  Mootness is, at least in part, a constitutional limit on

13  jurisdiction, in that it "derives from the requirement of Art. III

14  of the Constitution under which the exercise of judicial power

15  depends upon the existence of a case or controversy." DeFunis v.

16  Odegaard, 416 U.S. 312, 316 (U.S. 1974) (internal quotations

17  omitted).  Because mootness potentially goes to the question of

18  whether this court has jurisdiction over the case, the court must

19  begin with this argument.

20      Plaintiff complains of the use of "'Closed Loop Marketing' or

21  any derivative name, including but not limited to CLM." (Compl.

22  ¶ 17.)  This fact alone is enough to defeat defendant's mootness

23  argument.  There is clearly an active dispute between the parties

24  as to whether the name CLM infringes on any rights held by the

25  plaintiff, and this court has the power to remedy plaintiff's

26  injury, if any, by enjoining defendant from using a name it

1   otherwise intends to use.  Therefore, plaintiff's claims are not
2   moot.

3   **B.    The Lanham Act Claim**

4       Plaintiff's Lanham Act claim is the center of the court's
5   inquiry, because the parties agree that plaintiff's state-law
6   unfair competition and unjust enrichment claims are entirely
7   derivative of this claim.  The court concludes that even when the
8   allegations and evidence are construed most favorably to the
9   plaintiff, plaintiff cannot succeed on this claim.

10      A claim under section 43(a) of the Lanham Act requires two
11  elements: 1) a valid, protectable proprietary interest in the trade
12  name, and 2) that defendant's use of the name creates a "likelihood
13  of confusion" in the general public.  New West Corp. v. NYWM Co.
14  of California, Inc., 595 F.2d 1194, 1198-1202 (9th Cir. 1979), 15
15  U.S.C. § 1125(a).

16      **1.    Whether Plaintiff Has A Protectable Interest In The Name**

17      Courts have distinguished five categories of names, each of
18  which is entitled to a different degree of protection.   The
19  categories are, from least to most protected, "(1) generic; (2)
20  descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful."
21  Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927
22  (9th Cir. 2005) (citing KP Permanent Make-Up, Inc. v. Lasting
23  Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005)).  In this
24  case, plaintiff argues that the name is either suggestive or that
25  it is descriptive but with a secondary meaning, either of which
26  would entitle plaintiff to protection.  Defendant argues that the

8

1  name is generic, or that it is descriptive and without a secondary

2  meaning, and therefore not entitled to protection.[4]

3      Before addressing the substance of this question, the court

4  addresses three preliminaries.  The first is that this question--

5  which category a name fits into--is at least in part a question of

6  fact.  Yellow Cab. Co., 419 F.3d at 929 (quoting Stuhlbarg Int'l

7  Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 840 (9th Cir.

8  2001)) ("[W]hether a mark is generic is a question of fact.").

9  Plaintiff argues that this court is therefore unable to resolve

10  this question against plaintiff on a motion to dismiss.  However,

11  the requirement that the court accept all plaintiff's factual

12  allegations as true, and construe the available evidence in the

13  light most favorable to plaintiff, does not compel the court to

14  accept plaintiff's conclusory allegations as to which category the

15  name "closed loop marketing" fits into.  Instead, the court asks

16  whether the plaintiff's allegations or the judicially noticed facts

17  are sufficient to resolve this question.   The second preliminary

18  is to note that for purposes of a claim under section 43(a), trade

19  names, trade marks, and service marks are treated similarly.  These

20  terms' meanings differ, but the protection of each rests "upon the

21  same  fundamental  principles."  American  Steel  Foundries  v.

22  Robertson, 269 U.S. 372, 380 (1926).  Therefore, they receive the

23  same protection under section 43(a).  Accuride International, Inc.

24

25      [4] Because the name is not registered, at trial, plaintiff
would bear the burden of showing that the name is protectable.
26  Yellow Cab, 419 F.3d at 928.  However, on a motion to dismiss, this
burden is on the defendant.

1   v. Accuride Corp., 871 F.2d 1531, 1534-35 (9th Cir. 1989).   See

2   also 1 Thomas McCarthy, McCarthy on Trademarks and Unfair

3   Competition §§ 4:14, 9:1-4 (4th ed. 2008).  Accordingly, this court

4   does not distinguish among trade names, trade marks and service

5   marks in evaluating plaintiff's claim.

6       The final preliminary is to determine the effect of the United

7   States Patent and Trademark Office (PTO) determination.  This court

8   is not the first institution to evaluate the protectability of

9   "closed loop marketing."  The PTO determined that the name was not

10  protectable when it rejected plaintiff's application to register

11  it as a service mark.  This rejection has two consequences for this

12  case.  First, plaintiff is not entitled to a presumption that the

13  service mark (now argued to be a trade name) is protectable, and

14  second, the PTO's evaluation may serve as a persuasive authority

15  indicating that the mark is not protectable.  See, e.g., Schawn's

16  IP, LLC v. Kraft Pizza Company, 379 F. Supp. 2d 1016, 1021 (D.

17  Minn. 2005).

18      Plaintiff argues that the PTO determination does not indicate

19  ineligibility for protection, because unregistered marks and names

20  may be protectable.   Chronicle Publishing Co. v. Chronicle

21  Publications, Inc., 733 F. Supp. 1371, 1375 (N.D. Cal. 1989),

22  Tonawanda Street Corp. v. Fay's Drug Co., 842 F.2d 643, 647 (2d

23  Cir. 1988).  Contrary to plaintiff's assertions, however, the cited

24  cases considered marks that were unregistered, rather than

25  unregisterable.  In those cases, there had been no attempt to

26  register the mark.  Here, in contrast, plaintiff applied to

10

Case 2:08-cv-01500-LKK-DAD   Document 44   Filed 11/13/08   Page 11 of 17

1  register the mark/name, only to have that application rejected.

2  In rejecting plaintiff's application, the PTO answered the same

3  question facing this court, whether the name is protectable.

4      Nonetheless, the court does not rely on the PTO's conclusions

5  in determining either the appropriate categorization of the name

6  or the broader question of protectability.  It appears to the court

7  that the PTO did not make a determination as to whether the name

8  was generic or descriptive; the PTO referred to the term as both

9  "merely descriptive of the identified services" and as "generic as

10 applied to the services."  (Def.'s RFJN Opp'n Prelim. Inj. Ex. 49,

11 1.)  The PTO must have determined that if the name was descriptive,

12 it lacked secondary meaning, and was therefore unprotectable.

13 However, plaintiff now sufficiently alleges secondary meaning that

14 would render a descriptive mark protectable.

15              i.   **Suggestive Names**

16     A suggestive name is one that "suggests rather than describes

17 an ingredient, quality, or characteristic requiring imagination,

18 thought, and perception to determine the nature of the [services]."

19 Park N' Fly, Inc. v. Dollar Park & Fly, Inc., 718 F.2d 327, 329

20 (9th Cir. 1983), rev'd on other grounds, 469 U.S. 189 (1985), see

21 also AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 349 (9th Cir.

22 1979).  Suggestive names are always entitled to protection.  Id.

23 Plaintiff argues that the term "closed loop marketing" is

24 suggestive because "a degree of industry knowledge and insight as

25 to the meaning of the term is required in order to connect the name

26

1   to the services provided by Plaintiff."   (Pl.'s Mem. Supp. Mot.

2   Prelim. Inj. at 6:2-4.)

3        This argument misses the point.  The question is what thought

4   process the consuming, rather than general, public must engage in.

5   Surgicenters of America v. Medical Dental Surgeries, 601 F.2d 1011,

6   1017 (9th. Cir. 1979) (holding that the "consuming public," which

7   consisted of doctors and their patients, considered the mark

8   "surgicenter" to be generic).  Although a member of the general

9   public might not be able to connect the name with the nature of the

10  service without the exercise of imagination, plaintiff has not

11  alleged that the consuming public (businesses purchasing internet

12  marketing services) must do so.  Under the circumstances, it is

13  appropriate to conclude that the name "closed loop marketing" is

14  not suggestive.

15                **ii.  Generic and Descriptive Names**

16       Because it is not suggestive, "Closed Loop Marketing" must

17  fall into either the "generic" or "descriptive" categories.  The

18  distinction between the two carries significant consequences:

19  descriptive marks are entitled to protection *if* the mark has

20  acquired a secondary meaning, whereas generic marks are not

21  entitled to any protection, regardless of secondary meaning or

22  consumer confusion.

23       The Ninth Circuit has provided several articulations of this

24  distinction.  In Official Airline Guides v. Goss, the court stated

25  that if a term identifies "the genus of which the particular

26  product is a species" then it is generic, but if it "describes the

                                  12

1   qualities or characteristics of a good or service" then it is

2   descriptive.  6 F.3d 1385, 198 (9th Cir. 1993) (quoting Park 'N

3   Fly, 469 U.S. at 194).  In Kendall-Jackson Winery v. E. & J. Gallo

4   Winery, the court held that a generic term "simply state[s] what

5   the product is." 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). Kendall-

6   Jackson illustrated this test by citing with approval cases that

7   had concluded that, inter alia, "Wickerware" was a generic term for

8   wicker furniture and accessories, but that "Honey Baked Ham" was

9   a descriptive, rather than generic, term for ham that has been

10  baked in honey.  Id.

11      One way to draw this distinction is the "who are you/what are

12  you" test.  "A [protectable] mark answers the buyer's questions

13  'Who are you?' 'Where do you come from?' 'Who vouches for you?' But

14  the generic name of the product answers the question 'What are

15  you?'" Yellow Cab Co., 419 F.3d at 929-30 (citing Filipino Yellow

16  Pages, Inc. v. Asian Journal Publs., Inc., 198 F.3d 1143, 1147 (9th

17  Cir. 1999) (quoting Official Airline Guides, 6 F.3d at 1391)).

18  Applying this test, the Ninth Circuit concluded that the name

19  "'Filipino yellow pages' answered the 'what are you?' question, and

20  was thus a generic term. . . . [I]f asked, 'What are you?' [] three

21  competing companies could all answer 'a Filipino yellow pages.'"[5]

22  _____

23      [5] Yellow Cab Co. stated that "'Filipino yellow pages' answered
    the 'what are you?' question, and was thus a generic term." 419
24  F.3d at 929.  However, in Filipino Yellow Pages, the Ninth Circuit
    avoided definitively answering whether the mark "Filipino Yellow
25  Pages" was generic, instead holding that it unprotectable because
    it was either generic or "the feeblest of descriptive marks" and
26  without a secondary meaning. 198 F.3d at 1151-52.

1  <u>Id.</u> (internal citations omitted).  Conversely, the term "yellow

2  cab" is non-generic, because

> If one asks "What are you?" to companies called,
> for example, Checker Cab Co. or City Cab Co., one
> would expect the response "a taxicab company" or "a
> cab company."  Posing the question: "Could you
> refer me to a yellow cab company?", one would
> expect these same companies to point not to
> themselves, but to a business operating under the
> name "Yellow Cab."

7  <u>Id.</u>

8      Applying this test, the court concludes that "Closed Loop

9  Marketing" answers the question "what are you," and is therefore

10 a generic term.  Defendant's judicially noticed exhibits identify

11 at least six non-party companies that have actually answered the

12 question "could you refer me to a closed loop marketing company?"

13 by pointing to themselves, with websites advertising that they

14 offer closed loop marketing services.  Plaintiff does not dispute

15 that these companies do claim to offer such services or so

16 advertise.[6]

17     Plaintiff's allegations, do not address or refute this

18 conclusion.  All of plaintiff's purported counterarguments merely

19 argue that the name has acquired "secondary meaning" of referring

20 to plaintiff.  For example, plaintiff points to the complaint's

21 allegation that the trade name "Closed Loop Marketing" has become

22 _____

23     [6] Similarly, "Significant use of a term by competitors in the
   industry has traditionally been recognized . . . as indicating
24 genericness." <u>Mil-Mar Shoe Co. v. Shonac Corp.</u>, 75 F.3d 1153, 1159
   (7th Cir. 1996) (citing <u>Miller Brewing Co. v. G. Heileman Brewing</u>
25 <u>Co.</u>, 561 F.2d 75, 80 (7th Cir. 1977), 2 J. Thomas McCarthy,
   <u>McCarthy on Trademarks and Unfair Competition</u> § 12.02[7][b] (3d ed.
26 1995)).

14

1    associated in the minds of internet advertisers and search engine

2    marketing professionals with plaintiff's company. (Compl. ¶ 10.)

3    For purposes of this motion, the court must accept this allegation

4    as true.  However, allegations establishing a secondary meaning do

5    not indicate that the term is not generic. The question is whether

6    the original meaning of the name identifies a thing's (or

7    service's) genus or merely its qualities.  Plaintiff does not

8    provide allegations or arguments that speak directly to this

9    question, and thus secondary meaning is beside the point.

10              **iv.  Secondary Meaning Cannot Render A Generic Name**

11                   **Protectable**

12        Once it has been established that a name is generic, that name

13   is ineligible for protection regardless of any evidence of a

14   secondary meaning. <u>Two Pesos v. Taco Cabana</u>, 505 U.S. 763, 768

15   (U.S. 1992) ("generic marks . . . are not registerable as

16   trademarks."), <u>Park 'N Fly</u>, 718 F.2d at 329 ("A generic mark cannot

17   become a registrable trademark under any circumstances.").  This

18   is because "to allow a producer of goods to usurp a generic term

19   as a protectable trademark would prevent competitors from

20   describing their own goods adequately." <u>Mil-Mar Shoe Co. v. Shonac</u>

21   <u>Corp.</u>, 75 F.3d 1153, 1157 (7th Cir. 1996) (quoting <u>Technical Pub.</u>

22   <u>Co., Div. of Dun-Donnelley Pub. Corp. v. Lebhar-Friedman, Inc.</u>, 729

23   F.2d 1136, 1139 (7th Cir. 1984).

24        Therefore, the court concludes that the term "closed loop

25   marketing" is not protectable.

26   ////

1          **2.   Likelihood of Confusion**

2          Because the court concludes that plaintiff does not have a

3    protectable interest in the name, plaintiff's Lanham Act claim

4    fails.   New West Corp., 595 F.2d at 1198 (plaintiff must have "a

5    reasonable interest to be protected."). Therefore, the court does

6    not reach the second prong of a claim under section 43(a) of the

7    Lanham Act, the likelihood of confusion: confusion resulting from

8    multiple parties' use of a generic name cannot support such a

9    claim.

10   **C.   State Law Claims**

11         Plaintiff and defendant agree that the state law claims are

12   derivative of the Lanham act claim. Plaintiff's Unfair Competition

13   claim, brought under California Business and Professions Code

14   section 17200, requires plaintiff to allege that defendant's

15   conduct was unlawful or unfair. Plaintiff attempts to satisfy this

16   burden by relying on the claimed violations of the Lanham Act, and

17   the court rejects this claim.   Similarly, plaintiff's unjust

18   enrichment claim seeks to recover the benefit derived from

19   "unlawful actions," and thereby depends on the Lanham Act and

20   Unfair Competition claims to establish that defendant's actions

21   were in fact unlawful. Therefore, plaintiff's state law claims are

22   dismissed.

23                          **IV. CONCLUSION**

24         For the reasons stated above, defendant's motion to dismiss

25   is GRANTED, and plaintiff's motion for a preliminary injunction is

26   ////

                                  16

1   DENIED.   The Clerk of the Court is directed to CLOSE this case.

2        IT IS SO ORDERED.

3        DATED:   November 13, 2008.

4

5

6                                    LAWRENCE K. KARLTON
                                     SENIOR JUDGE
7                                    UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26